UNITED STATES BANKRIPTCY COURT
WESTERN DISTRICT OF OKLAHOMA

FILED

2016 FEB 24 P 2: 54

GRANT PRICE, CLERK
U.S. BANKRUPTCY COURT
WESTERN DISTRICT OF OK

DEPUTY

In re:

PATRICK GLENN HUTCHISON )     Chapter 7
     Plaintiff, )     Case No. 16-10240
  )
vs. )
  )
AMERICA'S WHOLESALE LENDER, )
BANK OF NEWYORK MELLON, as TRUSTEE, )
FOR CERTIFICATEHOLDERS, CWABS, INC., )
ASSET-BACKED CERTIFICATES, SERIES )     Adversary Case
2006-17, COUNTRYWIDE HOME LOANS, INC.,)     No._____
BANK OF AMERICA, N.A., SPECIALIZED )
LOAN SERVICING, & BAER, TIMBERLAKE, )
COULSON & CATES )
     Defendant(s). )
  )

## COMPLAINT TO OBTAIN AN INJUNCTION AGAINST FORECLOSURE, TO VACATE SUMMARY JUDGMENT, QUASH SPECIAL EXECUTION AND CONFIRMATION OF SALE, AND FOR DISMISSAL

COMES NOW, the Plaintiff, PATRICK GLENN HUTCHISON, Debtor and Plaintiff, PRO SE, brings this complaint against Defendants and alleged Creditors pursuant to 31 Okla. Stat. Ann. § 1 (A) (1), and respectfully asks the Court for an Injunction against the unlawful foreclosure and sale of his home by the Defendants in this adversary complaint. The Defendants are not real creditors in interest and therefore the District Court lacked subject matter jurisdiction in granting summary judgment to Bank of New York Mellon and Plaintiff asks this Court to vacate said Judgment.

### JURISDICTION

Jurisdiction of the Bankruptcy Court in this matter is provided by 28 U.S.C. §§ 1334 and 157.

This is a core proceeding.

## PARTIES

1.  Plaintiff/Debtor, Patrick Glenn Hutchison, is an adult individual residing at

1508 SW 43rd Street, Oklahoma City, OK, and is the present owner of real property covering the

described real estate in said county, to-wit:

> Lot Three (3), in block 18 (18), in South Section of Reding's
> Rancho Village, Oklahoma County, Oklahoma, according to the
> Recorded Plat thereof.

Patrick Glenn Hutchison is a debtor in this Court, having filed a petition pursuant to chapter 7,

Title 11 of the Bankruptcy Code on January 28, 2016.

2.  Defendant, Bank of New York Mellon (BONYM), as Trustee, for Certificateholders,
    CWABS,Inc., Asset-Backed Certificate, Series 2006-17 is a REMIC Trust held by
    BONYM as Trustee whose principal place of business is, according to their website,
    225 Liberty Street, New York, NY 10286.

3.  Defendant, Specialized Loan Servicing, LLC., (SLS) is allegedly a servicer whose

principal place of business is at 8742 Lucent Blvd., Suite 300, Highlands Ranch, CO 80129.

4.  Defendant, Countrywide Home Loans, Inc., (CWHL) was a corporation whose

principal place of business was 4500 Park Granada Boulevard, Calabasas, CA 91302.  Bank of

America purchased Countrywide in 2008.

5.  Defendant, Bank of America, N.A. (BANA), is a servicer replacing Countrywide

Home Loans, Inc. in 2008.  BANA operates from the former Countrywide offices at 7105

Corporate Dr., Plano, TX 75024 in Collin County.  BANA has a principal place of business at

4161 Piedmoont Parkway, Greensboro, NC 27410.

5.  Defendant, America's Wholesale Lender (AWL), upon information and belief, is not

a Corporation or a Lender.  The name "America's Wholesale Lender" is a registered Service

Mark used by Countrywide in its advertising and was never registered by Countrywide as a

Corporation in New York State or listed as a Subsidary in 10k filings with the SEC. The true

Lender remains unknown to date.

6.    Defendant, Baer, Timberlake, Coulson & Cates (BTCC), is a Law Firm whose

principal place of business is at 4200 Perimeter Center Pl # 100, Oklahoma City, OK 73112 with

a mailing address of PO Box 18486, Oklahoma City, OK 73154-0486.


## BACKGROUND

In 2006, Plaintiff, with the intent to purchase his first home, hired a real estate agent who

instructed him to obtain financing "pre-approval". This pre-approval was acquired from a local

broker through Countrywide for $100,000.00. Plaintiff was led to believe he could purchase his

home without a down payment and his financing would be for a traditional 30 year fixed rate.

Plaintiff made an offer to purchase his home and on August, 08 2006 attended a "closing" at

First American Title where the closing agent presented a stack of documents allegedly

representing a Note and Mortgage to complete a purchase transaction on his home. Plaintiff was

instructed by the closing agent where to sign on each page while he was given a brief overview

of each page needing a signature. Plaintiff was told at the alleged closing that he did not qualify

for a 30 year fixed rate loan, and his mortgage broker negotiated an Adjustable Rate Mortgage

that Plaintiff could refinance for a fixed rate after two years because the first rate adjustment

would adjust at that time. This was all presented to Plaintiff as if it was ordinary business and

this was a common practice for first time home buyers.

Around March or April of 2007, due to circumstances beyond his control, Plaintiff's

income decreased. This decrease was temporary because of new employment, but he struggled

Coulson & Cates (BTCC) allegedly representing Defendant Bank of New York (BONYM), filed a petition to foreclose in the Western District Court, Case # CJ-2007-5896.[1]  On August 14, 2007, a Journal Entry of Judgment was entered in favor of BONYM.  The property was appraised at $75,000.  On November 01, 2007, a motion to confirm sale was filed and set for hearing.  Then on November 07, 2007, BTCC filed an Application to Vacate Sale and an Order Vacating Sale was issued on November 09, 2007.  Plaintiff and Defendant, Countrywide Home Loans, Inc. (CWHL) entered into a trial modification agreement that included 4 trial payments and the modification payments were successfully completed by Plaintiff.  The Motion to Confirm Sale was stricken on November, 30 2007.

Plaintiff again experienced an income decrease caused by job loss due to his employer closing the business where Plaintiff was employed and fell behind.  The first rate adjustment was due to adjust in September 2008.  The adjustment added approximately two hundred dollars to the monthly payment.  Plaintiff decided he would sell his home and listed with a real estate agent but no offers were received.  Around the same time in late 2008, the economy was suffering from a stock market drop and it was during this time that Bank of America completed the purchase of Countrywide.

In 2010, around April or May, Bank of America, N.A. (BANA) sent to Plaintiff a packet containing instructions and an application for HAMP loan modification.  Plaintiff completed the application on May 8, 2010 and returned it, via prepaid FedEx envelope, along with all requested documentation to BANA and was told the process of application would take around 2-3 months and when the application process was complete he would be informed whether he was approved

---

[1] This case can be reviewed at www.oscn.net or by the following link:
http://www.oscn.net/dockets/GetCaseInformation.aspx?db=oklahoma&number=CJ-2007-5896.

for modification or denied.  On May 29, 2010, Plaintiff received a letter claiming that required documents were not received and again he sent all requested documentation by FedEx prepaid envelope the same day.  This process of lost documents or missing documents occurred 3 additional times over the following 3 months.  Plaintiff called the Home Retention Department to enquire the status of his HAMP application and was again told that the application documents were never received.  He inquired about faxing the documents and calling to make sure they were received and he was given instructions to do so on June 15, 2010.  Plaintiff repeated this action again in July and August while calling to inquire the status of his application.  On September 22, 2010, Plaintiff received a letter acknowledging receipt of all documentation that stated he would receive an answer in 30 days regarding a loan modification.  Plaintiff had no communication by mail and no one he spoke with by phone was able to give him any information regarding the status of his HAMP application from September through December.  Plaintiff received a letter by mail on December 7, 2010 notifying him that he was not eligible for modification.  When Plaintiff initially applied, he was told that any foreclosure action against him would be suspended and any action to sell his home would not be pursued as long as he was applying for modification or in the process of being approved.

On August 13, 2009, the court issued an Execution of Sheriff Sale post judgment for sale on October 01, 2009.  The sale was recalled on October 01, 2009.

On January 12, 2010, the court issued a Second Alias Execution of Sheriff Sale post judgment for sale on March 4th, 2010.  The sale was recalled on March 4th, 2010.

On May 03, 2010, the court issued a Third Alias Execution of Sheriff Sale post judgment for sale on June 24, 2010.  The sale was recalled on June 24, 2010.

On July 01, 2010, the court issued a Fourth Alias Execution of Sheriff Sale post judgment for sale on August 19, 2010. The sale was recalled on August 19, 2010.

In mid-October 2010, Bank of America announced it was suspending foreclosure actions nationwide in response to allegations of robo-signing and fabricating documents in connection with foreclosures. Plaintiff at this time discovered a document called an "Assignment of Mortgage"[2] recorded with the Oklahoma County Registrar of Deeds that alleges to assign both the Note and Mortgage to Bank of New York by Mortgage Electronic Registration System (MERS), as Nominee for Lender AWL. The assignment was signed and notarized in Collin County, Texas, which is the location of the servicing offices of Countrywide Home Loans, Inc. (now Bank of America, N.A.) and is signed by Amanda Farrar, a Vice President of MERS whose main business location is in the state of Delaware.

From this discovery, through November of 2011, Plaintiff uncovered other questionable issues concerning the alleged Note and Mortgage, such as the Lender identified as America's Wholesale Lender[3] did not exist as a Corporation as stated on Plaintiff's alleged Mortgage document. He also discovered there were undisclosed acts and other Third parties involved in connection with Plaintiff's Note in a process called Securitization. At this time, Plaintiff did not understand fully what the ramifications of this information would result in, but it was evident that the party attempting to foreclose was representing to the Court it had the right to foreclose when they did not have the legal right to do so. The alleged Mortgage identifies Mortgage Electronic Registration Systems, Inc. "Nominee" for the alleged "Lender" its successors and

---

[2] A Certified Copy is attached as Plaintiff Exhibit 1.
[3] The alleged Mortgage and Note identify the "Lender" as America's Wholesale Lender. The alleged Mortgage states "Lender is a Corporation organized and existing under the laws of New York." There was no Corporation named AWL registered by the New York Secretary of State in 2006. America's Wholesale Lender is a fictitious business name and there is no reference in the document to Countrywide Home Loans, Inc., d/b/a America's Wholesale Lender and no evidence is offered to establish an agency authority to transfer

assigns. MERS is a private database tracking transfers in Notes and Mortgages for all

participating bank members and allows the banks to circumvent charges for filing in each county

Registrar of Deeds Office. MERS has no ownership interest in the Note and Mortgage and acts

in limited capacity as "Nominee" for the alleged Lender AWL.

On October 12, 2011, after BANA lifted the freeze on foreclosure actions, the court

issued a Fifth Alias Execution of Sheriff Sale post judgment for sale on December 1, 2011. The

sale was recalled on December 01, 2011.

Plaintiff attempted to address the discovery of questionable practices in defense of

foreclosure on his home and filed a Pro Se Motion to Vacate on November 21, 2011. This

Motion made mention of the fraudulent signatures on the Assignment of Mortgage, and the issue

of BONYM's standing to foreclose and a request to produce the original Note. A hearing on the

Motion to Vacate was scheduled for December 16, 2011 and the sale on December 01, 2011 was

recalled. At the hearing on December 16, 2011, Judge Owens stated that Plaintiff was about

three years too late and Plaintiff's Motion To Vacate was overruled.

**Four days later** on December 20, 2011, BTCC filed an Application to Vacate Judgment

with the court. The Application to Vacate Judgement states:

> "That sufficient funds have been received from the Defendant and
> present record owner, Patrick Glenn Hutchison, by the Plaintiff (BONYM)
> herein to effectuate loss mitigation **and to pay the delinquency upon said
> Note and Mortgage, together with all costs of this suit**; that it is the
> mutual desire of the parties to this cause to have said judgment vacated and
> said Note and Mortgage restored and redelivered to the Plaintiff (BONYM)
> with the same force and effect as though said judgment had never been
> entered."

Plaintiff had no knowledge of this Application to Vacate Judgment and the "sufficient funds" received as stated by BONYM and council BTCC remain a mystery. There is no evidence submitted to the court establishing an amount received or when they received funds. The Order Vacating Judgement was filed two days later on December 22, 2011. Plaintiff received a copy of the Order Vacating Judgment by first class mail on or around March 2nd or 3rd. 2012. This was all done without Plaintiff's knowledge or agreement.

Upon information and belief, the sudden and voluntary dismissal by BONYM was because there was an issue with the original Petition filed in 2007 in light of other court decisions regarding standing.[4] The original Petition filed by BONYM contained Exhibits that were faulty and incomplete. The copy of the Note contained small black circles at the top of the page that usually appeared on photocopied pages where holes appeared on the original paper. The copy of the Note is a three page document and does not contain any endorsement. The Mortgage document is an eleven page document but only pages one, two, ten, and eleven are included in the Exhibit and pages three through nine are missing.

February 24, 2012 Plaintiff received a statement letter from Defendant Specialized Loan Servicing, LLC. (SLS) informing him that the servicing of his loan had been *transferred* from BANA effective February 16, 2012. Plaintiff received another letter from SLS dated March 25,

---

[4] January through March 2012, the Oklahoma Supreme Court issued several decisions regarding the standing of the foreclosing party and the necessity of showing Plaintiff is "entitled to enforce" prior to filing an action to foreclose. The only published case is Deutsche Bank v. Brumbaugh, 2012 OK 3, 270 P.3d 151

In Brumbaugh, the Court cited *Fent v. Contingency Review Board*, 2007 OK 27, *footnote 19, 163 P.3d 512, 519,* which states, "Standing refers to a person's legal right to seek relief in a judicial forum. The three threshold criteria of standing are (1) a legally protected interest which must have been injured in fact- *i.e.,* suffered an injury which is actual, concrete and not conjectural in nature, (2) a causal nexus between the injury and the complained-of conduct, and (3) a likelihood, as opposed to mere speculation, that the injury is capable of being redressed by a favorable court decision. The doctrine of standing ensures a party has a personal stake in the outcome of a case and the parties are truly adverse. *Fent v. Contingency Review Board*, 2007 OK 27, *¶7, 163 P.3d 512, 519-520.* In essence, **a plaintiff who has not suffered an injury attributable to the defendant lacks standing to bring a suit.**

2012 with a title of <u>Notice of Default and Notice of Intent to Foreclose</u>. This letter stated the note was in default due to non-payment of the 12/01/07 payment and all payments thereafter. The amount to cure is stated as $50,531.81 and the unpaid principal balance as $63,547.38. This letter states that SLS is the current creditor to whom the debt is owed.

On June 18, 2012, Plaintiff received a letter from BTCC identified as a <u>Debt Verification Notice</u>. The letter states that BTCC has been retained by SLS as the owner or servicer of the loan and the amount currently due and owing is $110,268.50. The amounts owed in each letter do not appear to reflect the amount received by BONYM referenced in the Application to Vacate Judgement to cure the default by payment of the delinquency on the Note & Mortgage plus the cost of the suit. Which amount as stated in either letter is accurate?

Plaintiff has sent Bank of America, SLS, and BTCC a separate Qualified Written Request (QWR) for detailed and specific information concerning the identity of the owner of the alleged Note and Mortgage, detailed histories of payments and how they were applied, a history of the escrow account, information on any additional fees charged, etc. Bank of America replied 90 days after they received the QWR and barely included any of the requested information. The response did detail, as listed in a Loan Transaction History Spreadsheet, an additional fee charged for monthly home inspections that were never disclosed to me. A $15 fee was added every month (sometimes twice each month) from the first month to current. SLS has continued this practice and has scheduled contracted "home inspectors" to visit Plaintiff's property and take photographs. This is an absurd and highly harassing action to endure every single month.

December 16, 2013, BTCC filed a Petition to foreclose on Plaintiff's home for a second time (Case # CJ-2013-6853)[5]. The Exhibits filed with the petition include the three page Note that includes an endorsement stamp in blank by Countrywide Home Loans, Inc., A New York Corporation, doing business as America's Wholesale Lender and rubber stamped with a signature identifying Michelle Sjolander as Executive Vice President. This endorsement stamp is undated and upon information and belief, was placed on the Note sometime between January 2012 and December 2013 so that BTCC could present the document to the court and allege BONYM was holder of the Note and had the authority to foreclose. It is established by the deposition of Michelle Sjolander in Kirby v. Bank of America[6] on January 25, 2012 that Ms. Sjolander had no personal knowledge of when the Notes were stamped with the endorsement stamp bearing her name; she was not present when it happened and has stated the same in more than one deposition under oath.

Summons was served on BANA on December 23, 2013 and BANA filed a "Disclaimer of Interest" on January 29, 2014. BANA as Defendant disclaims any interest, right, or title to property and asks to be dismissed from the foreclosure.

On March 20, 2014, Plaintiff, by his attorney, filed his Answers and Affirmative Defenses which deny all allegations of BONYM except the allegation that Patrick Hutchison was single and an admission that the attached copy of Mortgage contains a provision to have property appraised but denies Mortgage document is true document signed by Plaintiff. The Affirmative

---

[5] This case can be reviewed at www.oscn.net or by the following link:
http://www.oscn.net/dockets/GetCaseInformation.aspx?db=oklahoma&number=CJ-2013-6853

[6] Full Deposition Transcript can be found at the following link:
http://4closurefraud.org/2012/03/22/robo-stamped-full-deposition-of-michele-sjolander-executive-vice-president-of-countrywide-home-loans/

Defenses list the failure of Defendants to comply with provisions in TILA and Reg. Z, RESPA, FDCPA, Defendant is not a real party in interest, lack of standing, and Unclean Hands against BONYM.

BONYM filed a Motion for Summary Judgment on January 05, 2015 and hearing was set for February 13, 2015 at 10:00am.

Plaintiff attorney filed an Objection to Motion for Summary Judgment without Plaintiff reviewing contents of document and as a result, the Objection to Motion contains admissions to alleged statements of fact made by BONYM that are contrary to the position of Plaintiff's case and Plaintiff was not truly represented by the filed Objection to Motion. His attorney was fired and filed a Motion to Withdraw on February 13, 2015.

Plaintiff filed Bankruptcy on February 12, 2015. The Bankruptcy filing fee was divided into four payments and Plaintiff made three of the four payments. Plaintiff became unemployed and at a Bankruptcy hearing requested the court for additional time to pay the final payment. The request was granted but Plaintiff could not make the final payment in time and the Bankruptcy case was dismissed on July 15, 2015.

On September 17, 2015 a hearing on Motion for Summary Judgment was set for October 02, 2015. Plaintiff attended and Judge Ordered Summary Judgment for BONYM. A Journal Entry of Judgment was filed on October 15, 2015. Plaintiff filed a Motion to Vacate Summary Judgment containing an admission by BONYM that the alleged Note was not owned by BONYM and they had no authority to foreclose, or sell the property of Plaintiff because they were a Trustee only. No hearing was set for the Motion to Vacate Summary Judgment.

On November 16, 2015 Plaintiff's property was appraised for $68,000.  On December 10, 2015 notice of sale was issued for 01-07-2016.  Sheriff sale was held on January 07, 2016 and BONYM allegedly was highest bidder for $49,000.00.  A Motion to Confirm Sale was filed and hearing was set for January 29, 2016.  Order confirming alleged sale to BONYM was issued on January 29, 2016.

Plaintiff filed Bankruptcy on January 28, 2016.  BONYM filed an Application to Vacate Order Confirming Sale and Void Sheriff's Deed on February 5, 2016.

## STATEMENT OF FACTS

### NO BINDING LEGAL CONTRACT BETWEEN PARTIES

This adversary complaint arises because Defendants perpetrated fraud upon the Court.  The alleged loan documents refer to a non-existent lender named "America's Wholesale Lender".  It is established as fact in several cases that this was done intentionally to deceive and gain profit through fraudulent means.   The alleged Note and Mortgage represent a loan transaction that never took place.  15 OK Stat § 15-2 (2014), states there are four requisites to a legal and binding contract, and they are essential to its existence:

> "§152.  Requisites of a contract.
>     It is essential to the existence of a contract that there should be:
>     1. Parties capable of contracting.
>     2. Their consent.
>     3. A lawful object; and,
>     4. Sufficient cause or consideration.
>                                   R.L.1910, § 876."

The alleged Note presented to the District Court fails in three out of four essential requisites of a contract because the named lender does not exist[7]. The true creditor remains undisclosed to present day despite many requests by the Plaintiff to reveal the identity of the actual originating party. Plaintiff has sent three QWRs that request the identity of the owner or source of funds, and every request to identify the owner or originator have been denied. The party identified on the alleged Note/Mortgage as "America's Wholesale Lender" was not capable of contracting so there was no "meeting of the minds". In response to my email[8] to BONYM on October 22, 2015 requesting to identify the owner of the alleged Note, Defendant, Bank of New York Mellon, admitted they do not own the alleged Note or Mortgage and gives instruction to contact the servicer (BANA) for my requested information. Because there were (1) parties incapable of contracting, and (2) no mutual consent to contract, the (3) consideration from the named Lender to the Seller did not happen. 15 O.S. §15-28 also states,

> **"It is essential to the validity of the contract, not only the parties should exist, but that it should be possible to identify them."**

Defendant has attempted to establish ownership of a not-existent contract through altering and fabricating documents and recording these documents in the public record or presenting them in foreclosure actions to the Court. There are no documents submitted to this court on behalf of Defendant, Bank of New York Mellon that support any claim of ownership on its behalf. Consummation of the loan contract is thus negated by two facts — (a) consideration never flowed from the "lender" (AWL) on the note and mortgage and (b) the investor or real creditor never accepted the proposed loan contract with borrowers. This failure to disclose the

---

[7] see **Pagano v. Americas Wholesale Lender,** 87 Conn. App. 474. Found here:
https://www.courtlistener.com/opinion/1467373/americas-wholesale-lender-v-pagano/ and Nash v. Bank of America, N.A., found here: https://findsenlaw.files.wordpress.com/2014/10/2014-10-16-nash-final-judgment.pdf
[8] A true and complete copy of email from Plaintiff to BONYM and the response is included as Exhibit 2.

actual Lender is a violation of TILA and renders the Note and Mortgage Void because the actual Creditor in Interest was not "at the table" leaving the loan contract unconsummated and Void "ab inito" and the Mortgage lien never perfected. Any payments to the alleged "creditors" under the ruse of the non-existent REMIC Trust is subject to disgorgement and claw back both in and out of bankruptcy court.

## NOTICE OF RESCISSION

On July 10, 2015, Plaintiff sent a Notice of Rescission[9] pursuant to TILA, 15 U.S.C. Section 1635. According to a unanimous Supreme Court decision (Jesionowski v. Countrywide Home Loans, 135 S. Ct. 790 (2015)), the rescission is effective upon mailing by the borrower, by operation of law. The alleged Note and Mortgage are Void. Defendants cannot enforce an action against Plaintiff using void instruments. TILA and Regulation Z are clear regarding who may dispute a rescission and how. Only the true creditor who can prove payment of money to fund a Note or to purchase from the funding party can file a court action within 20 days of the date the rescission was mailed. A letter sent to Plaintiff in response to the Notice of Rescission does not vacate the Rescission. Accordingly, on August 01, 2015, the alleged Note and Mortgage referenced in this action became Void and Defendants have waived their right to file any dispute action against the TILA rescission, as they did not file a court action against Plaintiff disputing his rescission within 20 days, as the statute clearly instructs.

## BRIEF IN SUPPORT

In support of Plaintiff's allegations, It is well established in cases across the country that Defendants have engaged in widespread and deliberate fraud against homeowners and investors

---

[9] A true and correct copy of Rescission Notice is attached along with Copy of Certified Return Receipt Card and response of SLS to Rescission Notice as Exhibit B.

which resulted in the current economic recession and almost total collapse of our economy that

resulted in an enormous profit generated through "proprietary trading" by the banks and Wall

Street. Defendants have even admitted to these actions in settlement agreements and have paid

multiple settlement awards in the millions of dollars to investors that were equally victims of

Defendants fraud. The fraud perpetrated against investors is only a fraction of the egregious and

illegal actions that banks committed against homeowners, Courts, and the US Government, all in

the pursuit of greed and profit.

1.   The alleged Note was never "consummated" by any named party in the documents

presented to the court. Defendants offer Exhibits that appear to establish a right to

foreclose, but the proffered paper trail Defendant claims is "prima fascia" evidence of

a right to enforce the security instrument does not follow a corresponding "money

trail" nor do they submit evidence of payment by any of the parties that support

ownership claims of BONYM. The real issue is what payments should be credited to

whom? The investors purchased bond certificates issued by a REMIC Trust and in

turn they would receive a portion of the revenue stream from "payments" of the

alleged underlying Mortgages the Trust owned or purchased with investor funds.

This NEVER happened. The beneficiaries (Investors) agreed to take payments from

the REMIC Trust --- not the "borrowers". There is no relationship between the

beneficiaries of a Trust and any single "borrower" or group of "borrowers." The

REMIC Trust doesn't pay the beneficiaries despite the paperwork (or Pooling and

Servicing Agreement) to the contrary. The REMIC Trust is inactive with no assets, no

bank accounts, and no business activity etc. It is the Master Servicer

(CWHL/BANA) that pays the beneficiaries. And the Master Servicer makes those

payments regardless of whether it has received payments from the homeowner (aka servicer advances). The note and mortgage name a specific payee (AWL) that is neither the Trust (nor Trustee) nor the Master Servicer. So who is the Owner of the debt or a Creditor in Interest that can claim the status of "Holder In Due Course"?

2. Defendants in all pleadings submitted to the Court, have alleged only "Holder" status and the Court has treated them as a Holder In Due Course by assuming that the homeowner received the benefit of the alleged loan at closing and so the defenses of the homeowner are never allowed to be asserted and tried on the merits, in court and the bank is allowed to take a "free house" and the obtain a judgment against the homeowner without allowing the homeowner due process to defend his property. By only alleging "Holder" status, the Bank is admitting that there was never any consideration given in payment to purchase the alleged Note or Mortgage and they offer no records or business documents of BONYM to prove they paid value and prove they are a creditor in interest to whom the homeowner owes an obligation.

3. There is absolutely NO reference to Countrywide Home Loans, Inc., d/b/a America's Wholesale Lender in the loan or the note in thousands of these loans which were originated between at least 2002 and 2007. Countrywide was the original SERVICER for most if not all of these mortgages. The document was to be mailed to a CW address after it was recorded per the box at the top of the first page of the Mortgage. THAT location is NOT part of the actual Mortgage content, as it is 'above the line'. The Defendants instead use an undated endorsement in blank from a party other than the named Lender identified as AWL, a New York Corporation, and fails to provide evidence that Countrywide Home Loans ever received the loan documents to accomplish a

legal transfer of the loan as required by law. The appearance of the endorsement stamp on the Note in the petition filed on December 16, 2013 and its absence from the Note offered in the 2007 foreclosure action gives a reasonable doubt that BONYM and council BTCC complied with all conditions president before filing the action to foreclose against Plaintiff and should not be allowed to vacate an action and sometime later refile the same action using fabricated documents in the attempt to reset the clock on any limitation statute that would favor the homeowner.

4.   In addition, Defendants relied on other questionable documents in an attempt to wrongfully foreclose on Plaintiff's home. The "Assignment of Mortgage" recorded in the public record in the Oklahoma County Registrar of Deeds office, is a fabricated and forged document created for the express purpose of filing and presenting to the court to obtain a Judgment against a homeowner and be granted a foreclosure deed to complete the fraud against investors and homeowners by deception and using the court to facilitate their fraudulent actions. Amanda Farrar is **not** an employee of MERS; she is employed by Countrywide (Bank of America) in the servicing offices in Plano, TX. This document was *forged* and fraudulently notarized so that it would *appear* that Bank of New York had standing to foreclose. The document was also created and filed on August 09, 2007 **AFTER** the foreclosure petition (CJ-2007-5896) was filed against Plaintiff and has language that *attempts to back date the document to July 10, 2007 before the filing of the petition to foreclose*. The Assignment also incorrectly states the Mortgage is dated May 8, 2006, and has instructions for return to the offices of Defendant BTCC. In addition, the Assignment of Mortgage is executed by Mortgage Electronic Registration Systems, Inc. (MERS),

as nominee for America's Wholesale Lender, successors, and assigns, however it is well established that MERS in nominee capacity has no authority to assign an interest in a mortgage MERS itself holds no interest in.

5.  The difference between the Note filed in 2007 and the Note filed in 2013 casts reasonable doubt as to the ownership alleged by BONYM or the claimed status of "Holder" by blank endorsement.  The actual date the Note was allegedly endorsed is in question and appears to have been applied sometime between January 2012 and December 2013 so that BTCC could use the document to allege BONYM was holder of the Note and had the authority to foreclose.  It is established by the deposition of Michelle Sjolander in Kirby v. Bank of America on January 25, 2012 that Ms. Sjolander had no personal knowledge of when the Notes were stamped with the endorsement stamp bearing her name; she was not present when it happened and has stated the same in more than one deposition under oath.  The endorsement is by a party not named in the document and Defendants offer no evidence of when or how the Note was negotiated from AWL (the named Lender) to CWHL as the endorsing party and no evidence establishing the relationship between AWL, Countrywide Home Loans, d/b/a America's Wholesale Lender, Countrywide Home Loans, Inc., or Bank of America.   Plaintiff, upon information and belief has no knowledge of a record of authority to do business in Oklahoma for Countrywide Home Loans, Inc., d/b/a America's Wholesale Lender.

6.  The alleged debt arose when the "borrower" accepted the benefits of funding that came from an unidentified source. It is presumed not to be a gift. The "borrower" has signed a note and mortgage in favor of a party that never loaned him any money ---

hence there is no loan contract and the signed note and mortgage should have been destroyed or released back to the "borrower." Such a loan is table-funded and is almost certainly "predatory per se" as described in REG Z. Therefore the rescission notice was timely because the three day right of rescission was not triggered due to a lack of consummation. Since there is no privity between the "originator" and the Trust or Servicer, the loan documents cannot be enforceable. Those documents should be considered void, not voidable, when the payee and mortgagee failed to fund the loan. The repeated transfers of the loan documents without anyone ever paying for them clearly means that the consideration at the base "closing" was absent. Hence there is no consideration at either the origination or acquisition of the loan documents. Acquisition of the loan documents does not mean acquisition of the loan. If there **was** no valid loan contract (no consummation) or there **is** no valid loan contract (rescission), then executing endorsements, assignments and powers of attorney are meaningless. TILA Rescission Statute, 15 USC §1635 is clear on its face, the Note and Mortgage are VOID and Defendants cannot use void documents it any action against Plaintiff to foreclose. If there are parties with equitable and legal claims against Plaintiff, these claims are unsecured. The attempted foreclosure against Plaintiff was for the benefit of parties who have no relationship with the actual money that was used to the benefit of the alleged "borrower" thus there is no creditor at law.

CONCLUSION

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

An award in favor of Plaintiff against Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, but including at a minimum:

1.  Damages for violations of TILA, FDCPA, and RESPA, as allowed by law,

2.  An Order of Injunction against foreclosure of Plaintiff's home, an Order to Vacate the Confirmation of Sale, Quash Special Execution, and Vacate Summary Judgment of Foreclosure against Plaintiff,

3.  Removal of recorded documents falsely claiming any interest as creditor or owner of Plaintiff Real Property,

4.  An Order to remove negative information reported to the three Credit Bureaus regarding the alleged Note and the fact that a valid contract never existed,

5.  A dismissal of the above entitled cause, and each and every part hereof, with prejudice, and granting any such other relief allowed by law, as may be appropriate.


PATRICK HUTCHISON, PLAINTIFF PRO SE
1508 SW LBRR G.
OKLAHOMA CITY, OK 73119
405-207-3982

20

Return to:
37098/143079766

Baer, Timberlake, Coulson & Cates, P.C.
5901 N. Western Ave., Suite 300
Oklahoma City, OK 73118

Doc # 2007125798
Bk 10589
Pg 1528-1529
DATE 08/29/07 08:25:20
Filing Fee $15.00
Documentary Tax $0.00
State of Oklahoma
County of Oklahoma
Oklahoma County Clerk
Carolynn Caudill

## ASSIGNMENT OF REAL ESTATE MORTGAGE

For value received, the undersigned, Mortgage Electronic Registration Systems, Inc., as nominee for America's Wholesale Lender and its successors and assigns does hereby assign, transfer and set over unto Bank of New York, as Trustee for the Certificateholders CWABS, Inc., Asset-Backed Certificates, Series 2006-17, that certain real estate mortgage dated May 8, 2006, granted by Patrick Glen Hutchison, a single person, in favor of Mortgage Electronic Registration Systems, Inc., as nominee for America's Wholesale Lender and its successors and assigns in the principal sum of $63,920.00, filed August 11, 2006, recorded in Book 10208, Page 1371, in the office of the County Clerk of Oklahoma County, State of Oklahoma, together with the note, debts and claims thereby secured, covering the following described real estate in said County, to-wit:

> Lot Three (3), in Block Eighteen (18), in South Section of Reding's Rancho Village, Oklahoma County, Oklahoma, according to the recorded plat thereof;

Signed and delivered this 9 day of August , 2007, but made effective as of July 10, 2007.

Mortgage Electronic Registration Systems, Inc., as nominee for America's Wholesale Lender and its successors and assigns

By: _Amanda Janos_

AMANDA FARRAR  VICE PRESIDENT
Vice President

2/15



CERTIFIED COPY

DEC 16 2011

CAROLYNN CAUDILL
County Clerk, Oklahoma County
By_____ Deputy

CORPORATION ACKNOWLEDGEMENT

STATE OF ____**TEXAS**____    )
                          ) ss.

COUNTY OF__**COLLIN**__    )

     BEFORE ME, the undersigned, a Notary Public in and for said County and State, on this _9_ day of _August_, 2007, personally appeared _____AMANDA FARRAR_____ to me known to be the identical person who signed the name of the maker thereof to the within and foregoing instrument as its Vice President and acknowledged to me that he/she executed the same as the free and voluntary act and deed of said corporation, for the uses and purposes therein set forth.

     Witness my hand and official seal the day and year last above written.

My Commission Expires:

_6/30/2010_
  (S E A L)

                                NOTARY PUBLIC

KIMBER MINCHER
Notary Public, State of Texas
My Commission Expires
June 30, 2010

**Oklahoma County, Oklahoma**
**Carolynn Caudill, County Clerk**
**320 Robert S. Kerr, Room 203**
**Oklahoma City, Oklahoma 73102**
**Phone: (405) 713-1540**
**http://countyclerk.oklahomacounty.org**



## Receipt for Services

| Cashier | LBLENN | | | Batch # | 385406 |
|---|---|---|---|---|---|

| | | | Date: | 12/16/2011 | Time: | 09:14:27AM |
|---|---|---|---|---|---|---|

**Remarks**    REQ # 5414
PATRICK HUTCHISON

| Date | Instrument No | Document Type | Transaction Type | GFNumber | Pg/Amt |
|---|---|---|---|---|---|
| | | **SF-ROD** | **ALL** | | |
| | | PC1 | PER PAGE COPY FEE | | 2.00 |
| | | CF1 | CERTIFIED COPY FEE | | 1.00 |
| **CASH** | | REQ # 5414 | | | 20.00 |
| | | PATRICK HUTCHISON | | | |
| **CASH** | | Change Made | | | -17.00 |

| | **Payment Total:** | **3.00** |
|---|---|---|

Credit card transactions incur an additional non-refundable service fee of $5.00.

UNLESS REQUESTED ALL AMOUNTS FOR OVERPAYMENTS IN THE AMOUNT OF
$10 OR MORE WILL BE ISSUED AT THE END OF THE MONTH

Patrick Glenn Hutchison
1508 SW 43rd Street
Oklahoma City, OK 73119

July 10, 2015                                    Certified Mail: 70030500000325374009

Specialized Loan Servicing, LLC
Attn: Customer Care Support
P.O. Box 636005
Littleton, CO 80163-6005

RE: Account Number 1006009718

## NOTICE OF TILA RESCISSION

Dear Sir or Ma'am:

I hereby exercise my right ro rescind the loan referenced above in its entirety, pursuant to the
provisions of the Truth In Lending Act ("TILA"), 15 U.S.C. Section 1635. Please return the canceled
Note and satisfaction of Mortgage to the address above with all monies paid.

Sincerely,

Patrick Hutchison

UNITED STATES POSTAL SERVICE

CO 802

16 JUL '15

PM 4 L



First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4 in this box •

PATRICK HUTCHISON
1508 SW 43RD STREET
OKLAHOMA CITY, OK 73119

**SENDER:** *COMPLETE THIS SECTION*

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

SPECIALIZED LOAN SERVICING, LLC
ATTN: CUSTOMER CARE SUPPORT
P.O. BOX 636005
LITTLETON, CO  80163-6005

*COMPLETE THIS SECTION ON DELIVERY*

A. Signature

X _____  ☐ Agent
                    ☐ Addressee

B. Received by ( Printed Name)     C. Date of Delivery
Houston                            7-16-15

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
   ☒ Certified Mail    ☐ Express Mail
   ☐ Registered        ☐ Return Receipt for Merchandise
   ☐ Insured Mail      ☐ C.O.D.

4. Restricted Delivery? *(Extra Fee)*        ☐ Yes

2. Article Number
   (Transfer from service label)     7003 0500 0003 2537 4009

PS Form 3811, February 2004       Domestic Return Receipt       102595-02-M-1540



8742 Lucent Boulevard ∘ Suite 300 ∘ Highlands Ranch, CO 80129                    ⊠ 800-315-4757
                                                                                  ⧉ 720-241-7218

August 7, 2015

Patrick Glen Hutchison
1508 SW 43rd ST.
Oklahoma City, OK 73119

RE: Loan Number: **1006009718**

Dear Patrick Glen Hutchison,

This letter is in response to your correspondence dated July 10, 2015 regarding TILA for the above
referenced mortgage account.

Upon review of your request and the servicing file, Specialized Loan Servicing ("SLS") does not recognize
the right to rescind the loan at this time

In researching your account, we have found no errors. You have a right to request the documents relied
upon in reaching this determination by contacting us at the number below.

If you have any questions regarding this information, please contact Customer Care toll free at 1-800-
315-4757, Monday through Friday, 6:00 a.m. until 6:00 p.m. MT or TDD 1-800-268-9419, Monday through
Friday, 8:00 a.m. until 5:00 p.m. MT.

Sincerely,

*[signature]*

Antoinette, Teller ID 04868
Customer Care Support
Specialized Loan Servicing LLC


**THIS COMMUNICATION IS FROM A DEBT COLLECTOR. THIS IS AN ATTEMPT TO COLLECT A
DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

**BANKRUPTCY NOTICE - IF YOU ARE A CUSTOMER IN BANKRUPTCY OR A CUSTOMER WHO
HAS RECEIVED A BANKRUPTCY DISCHARGE OF THIS DEBT: PLEASE BE ADVISED THAT THIS
NOTICE IS TO ADVISE YOU OF THE STATUS OF YOUR MORTGAGE LOAN. THIS NOTICE
CONSTITUTES NEITHER A DEMAND FOR PAYMENT NOR A NOTICE OF PERSONAL LIABILITY TO
ANY RECIPIENT HEREOF, WHO MIGHT HAVE RECEIVED A DISCHARGE OF SUCH DEBT IN
ACCORDANCE WITH APPLICABLE BANKRUPTCY LAWS OR WHO MIGHT BE SUBJECT TO THE
AUTOMATIC STAY OF SECTION 362 OF THE UNITED STATES BANKRUPTCY CODE. HOWEVER,
IT MAY BE A NOTICE OF POSSIBLE ENFORCEMENT OF THE LIEN AGAINST THE COLLATERAL
PROPERTY, WHICH HAS NOT BEEN DISCHARGED IN YOUR BANKRUPTCY. IF YOU HAVE
QUESTIONS, PLEASE CONTACT US AT 1-800-306-6057.**



Patrick Hutchison <kcirtap1770@gmail.com>

## Fw: Feedback from BNY Mellon -- CWABS, Inc. Trust 2006-17
1 message

**MBS.Property.Inquiries@bnymellon.com** <MBS.Property.Inquiries@bnymellon.com>    Fri, Oct 23, 2015 at
8:30 AM

To: kcirtap1770@gmail.com

Thank you for your recent correspondence.

As per our records, you will need to contact the servicer concerning your request.  The servicer info is as follows:

Servicer:  Bank of America N.A., Master Servicer
Phone #:  **Existing Mortgages/ REO:**  800 669 6607 (For callers interested in purchasing an available Bank of America owned property, please refer to BOA's  website at www.realestatecenter.bankofamerica.com)
    **Existing Home Equity Lines of Credit & Loans**: 800.934.5626

The servicer is the direct and only contact who would have the information you are seeking.  BNY Mellon is not an investor but a Trustee and therefore does not physically own the loan or the property.  BNY Mellon does not have any say in how the property is disposed, loan modifications, etc.  This is the responsibility of the Servicer.

If you were referred to BNY Mellon by Bank of America, please provide the name of Bank of America representative for our records.

Thank you for contacting BNY Mellon.

**BNY Mellon Property Inquiries**
Global Corporate Trust - Mortgage Backed Securities · Fax 212.815.3994

To : Corporate Trust
Name : Patrick Hutchison
EmailHome : kcirtap1770@gmail.com
Phone :
Comments : I am seeking information regarding the ownership of a Note/Mortgage. I was told by bank lawyers that Bank of New York Mellon owned a Note and Mortgage included in a CWABS, Inc. Trust 2006-17. The original Note #143079766 was dated August 8th , 2006 and was changed to #1006009718. I appreciate any information of ownership you can provide.

Thank you,
Patrick Hutchison